UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALVAREZ MILLINE, as Personal
Representative of the ESTATE of
ALVAREZ DEMETRIE MILLINE, Deceased

    Plaintiff,

v.

CORRECTCARE SOLUTIONS, L.L.C. *et al.*,

    Defendants.

Case No. 17-cv-12723
Hon. Matthew F. Leitman

_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION (ECF No. 131)

On March 7, 2016, Alverez Demetrie Milline ("AD Milline") tragically died of a pulmonary embolism while in custody at the Macomb County Jail. In this action, the personal representative of AD Milline's estate ("Plaintiff"[1]), brought a claim for gross negligence against, among others, Temitope Olagbaiye, a nurse practitioner for Correct Care Solutions, L.L.C. ("CCS"). The Court previously issued an Opinion and Order in which it construed that claim against Olagbaiye as one for medical malpractice (the "Malpractice Claim"). (*See* Op. and Order, ECF No. 117, PageID.3698-3702.) The Court then granted Defendants' motion for

---

[1] The Plaintiff is also named Alverez Milline. For ease of reference, the Court will refer to him as "Plaintiff."

summary judgment on the Malpractice Claim on the ground that Plaintiff failed to comply with Michigan law by submitting an affidavit of merit with his Complaint. (*See id.*)

Plaintiff now moves for reconsideration. (*See* Mot., ECF No. 131.) He argues that the Court erred when it concluded that an affidavit of merit is required for medical malpractice claims brought in federal court. (*See id.*) The Court agrees that it so erred. But the Court nonetheless declines to reconsider its grant of summary judgment against Plaintiff on the Malpractice Claim because the claim fails as a matter of law for the reasons discussed below. Plaintiff's motion for reconsideration is therefore **DENIED**.

**I**

The Court set forth the factual background of Plaintiff's claims at length and in detail in its two prior Opinions and Orders. (*See* Op. and Order, ECF No. 117, PageID.3661-3674; Op. and Order, ECF No. 134, PageID.4429-4433). The Court incorporates that background into this Opinion and Order and will not repeat it in depth here.

The essential facts underlying the current motion are as follows. On March 7, 2016, AD Milline was brought to the medical unit at the Macomb County Jail complaining of trouble breathing. (*See* Medical Records, ECF No. 83, PageID.1612.) He stopped responding to commands and lost consciousness. (*See*

*id.*)  He was then taken to McLaren Hospital where he was pronounced dead. (*See id.*, PageID.1611.)  The medical examiner who performed the autopsy on AD Milline determined that he "died of a pulmonary thromboembolism." (Dep. of Dr. Daniel Spitz at 11-12, ECF No. 82-6, PageID.1309.)

Plaintiff filed this action on August 18, 2017. (*See* Compl., ECF No. 1.) Plaintiff initially asserted claims against Macomb County, certain county officials,[2] CCS, and certain health professionals employed by CCS who provided medical care to AD Milline at Macomb County Jail – including Olagbaiye. (*See id.*)  Plaintiff claimed that CCS and its professionals were (1) deliberately indifferent to AD Milline's serious medical needs in violation of AD Milline's Eight Amendment Rights, and (2) grossly negligent under Michigan law.  As noted above, the Court previously construed the gross negligence claim as one for medical malpractice.

On November 30, 2020, the Court issued an Opinion and Order in which, as relevant here, it granted summary judgment in favor of all Defendants on the Malpractice Claim. (*See* Op. and Order., ECF No. 117.)  First, the Court determined that the Malpractice Claim sounded in medical malpractice, and it therefore construed the claim as one for medical malpractice. (*See id.*, PageID.3698-3702.) Next, the Court granted summary judgment on the Malpractice Claim because Plaintiff had not satisfied the prerequisites for a medical malpractice action under

---

[2] Plaintiff has since settled with Macomb County and the county's officials.

3

Michigan law – specifically, the requirement that Plaintiff file an affidavit of merit with his Complaint under Mich. Comp. Laws § 600.2912d(1) (the "Affidavit of Merit Statute"). (*See id.*, PageID.3702). Finally, as to Plaintiff's other claims, the Court (1) granted summary judgment in favor of all Defendants other than CCS and Olagbaiye on Plaintiff's Eighth Amendment deliberate indifference claims, (2) denied summary judgment without prejudice on Plaintiff's Eighth Amendment deliberate indifference claims against CCS and Olagbaiye, and (3) granted CCS and Olagbaiye leave to file a renewed motion for summary judgment on Plaintiff's Eighth Amendment claims. (*See id.*, PageID.3702-3703)

CCS and Olagbaiye subsequently filed a renewed motion for summary judgment on Plaintiff's Eighth Amendment claims. (*See* Ren. Mot., ECF No. 121.) The Court held a hearing on the motion, and during that hearing, Plaintiff asked the Court to reconsider its earlier ruling granting summary judgment against Plaintiff on the Malpractice Claim. Plaintiff argued for the first time that the Affidavit of Merit Statute did not apply to medical malpractice actions brought in federal court and that the Court therefore should not have dismissed the Malpractice Claim against Olagbaiye on the ground that he did not file an affidavit of merit with his Complaint. (*See* 6/25/2021 Hr'g Tr., ECF No. 130, PageID.4284.) The Court noted that Plaintiff's request for reconsideration was not filed within the fourteen-day time limit set by the Court's Local Rules, but the Court nonetheless agreed to permit

Plaintiff to file and fully brief a motion for reconsideration based upon his argument that he did not need to file an affidavit of merit. (*See id.*, PageID.4288.) After the Court granted Plaintiff leave to seek reconsideration, it invited Olagbaiye to respond to Plaintiff's motion with "any arguments" he had "with respect to the state law gross negligence claim." (*Id.*, PageID.4286.) Stated another way, the Court explained to Olagbaiye that he need not limit his response to the arguments made in Plaintiff's motion and that, instead, he should include in his response every ground on which he believed that the Malpractice Claim failed as a matter of law. Plaintiff indicated that he had no objection to proceeding in this manner. (*See id.*)

After the hearing concluded, the Court gave some additional thought to the issues to be addressed in connection with Plaintiff's motion for reconsideration. The Court then entered the following order directing the parties to present argument on one additional issue that was not discussed during the hearing:

> During a hearing on June 25, 2021, the Court orally granted Plaintiff leave to file a motion for reconsideration of the Court's prior ruling granting summary judgment on Plaintiff's gross negligence claim. (*See* Opinion and Order Dated November 30, 2020, ECF No. 117, PageID.3701-02.) When the Court granted leave, it identified a number of issues for the parties to address in the briefing on the motion.
>
> Following the hearing, the Court concluded that there is another issue that should be addressed in the briefing. The issue is: Assuming arguendo that Plaintiff's gross negligence claim is not subject to dismissal on the ground that Plaintiff failed to file an affidavit of merit pursuant to

5

> MCL §600.2912d, does the claim nonetheless fail as a matter of law because it is not supported by competent expert medical testimony? In answering this question, the parties should assume that the Court will adhere to its earlier decision that the gross negligence claim sounds in medical malpractice. Given that prior ruling by the Court, the parties should address (1) whether expert testimony is necessary to support a medical malpractice claim like the one asserted by Plaintiff, (2) whether Dr. Elder, a board certified cardiologist, is a competent witness under Mich. Comp. Laws §600.2169(1)(c) concerning the standard of care in a medical malpractice claim against Defendant Olagbaiye, a nurse practitioner, and (3) if Dr. Elder is not a competent witness in support of the medical malpractice claim against Defendant Olagbaiye, does the claim necessarily fail as a matter of law on the record before the Court? The parties should address these issues in addition to the other issues identified by the Court on the record during the hearing.

(Order, ECF No. 128.)

The Court highlights and summarizes other facts below as appropriate and necessary to the Court's analysis.

## II

Motions for reconsideration in this Court are governed by Local Rule 7.1(h). Under that rule, the movant must demonstrate that the Court was misled by a "palpable defect." E.D. Mich. L.R. 7.1(h)(3). A "palpable defect" is a defect that is obvious, clear, unmistakable, manifest, or plain. *See Witzke v. Hiller*, 972 F.Supp. 426, 427 (E.D. Mich. 1997). The movant must also show that the defect, if corrected, would result in a different disposition of the case. *See* E.D. Mich. L.R. 7.1(h)(3). A

motion for reconsideration is not a vehicle to rehash old arguments, or to proffer new arguments or evidence that the movant could have presented earlier. *See Sault Ste. Marie v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998).

### III

In his motion for reconsideration, Plaintiff argues that the Court erred when it granted summary judgment on the Malpractice Claim on the ground that Plaintiff failed to include an affidavit of merit with his Complaint. The Court agrees. However, as explained below, the Malpractice Claim still fails because Plaintiff has not supported his claim with competent expert testimony on the applicable standard of care. Plaintiff is therefore not entitled to reconsideration of the Court's decision to grant summary judgment in favor of the Defendants on the Malpractice Claim.

### A

As noted previously by this Court, the Affidavit of Merit Statute requires a plaintiff who brings a medical malpractice claim in state court to include with his complaint an affidavit of merit signed by a health professional that attests to the defendant's failure to meet the standard of patient care. (*See* Op. and Order, ECF No 117, PageID.3702, *citing* Mich. Comp. Laws § 600.2912d(1)). The Court now concludes that the Affidavit of Merit Statute does not apply in federal court.

The Sixth Circuit's decision in *Gallivan v. United States*, 943 F.3d 291 (6th Cir. 2019), guides the Court's analysis. In *Gallivan*, the Sixth Circuit considered whether Ohio's affidavit of merit statute applies to medical malpractice actions brought in federal court. The Ohio statute, much like Michigan's Affidavit of Merit Statute, requires a plaintiff bringing a medical malpractice claim to include with his complaint an affidavit from a medical professional attesting that the defendant breached the applicable standard of care. *See Gallivan*, 943 F.3d at 293. To determine whether the Ohio statute applied in federal court, the Sixth Circuit applied the two-step inquiry laid out by the United States Supreme Court in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). At the first step, a court asks "whether the Federal Rules of Civil Procedure answer the question in dispute: does someone need an affidavit of merit to state a claim for medical negligence?" *Gallivan*, 943 F.3d at 293. If the answer is yes, a court then asks "whether the Federal Rules are valid under the Constitution and the Rules Enabling Act." *Id.* "If the answers to both questions are yes, . . . [a court must] apply the Federal Rules" and not the state statute at issue. *Id.*

The Sixth Circuit held at the first step that "the Federal Rules provide a clear answer: no affidavit is required to state a claim for medical negligence." *Id.* The court identified three Federal Rules of Civil Procedure that conflict with an affidavit of merit requirement. First, the court identified Rule 8(a), which provides only that

8

"a complaint must include (1) a short and plain jurisdictional statement, (2) a short and plain statement of the claim, and (3) an explanation of the relief sought." *Id.* Unlike the Ohio statute, "Rule 8 does not require litigants to file any affidavits." *Id.* Second, the court identified Rule 12, which governs motions to dismiss. *Id.* Again, unlike the Ohio statute, Rule 12 "does not demand 'evidentiary support'—in an affidavit or any other form." *Id.* The Court explained that "[e]ven without an affidavit, a complaint can move beyond the pleading stage and into discovery" under the Federal Rules. *Id.* Finally, the court noted Rule 9, which identifies the limited cases in which plaintiffs are held to a heightened pleading standard (*e.g.*, when a plaintiff alleges fraud or mistake). That rule makes no mention of malpractice cases. The court concluded that enforcing an affidavit requirement in federal court "would upset the careful balance struct by the Federal Rules" between Rule 8's default, liberal pleading standard and Rule 9's narrow imposition of a more restrictive standard. *Id.* at 293-94. In sum, the court held the Federal Rules do not require a plaintiff "to file an affidavit with his complaint to state a claim." *Id.* at 294.

The court then moved on to the second step of the *Shady Grove* inquiry: determining "whether the relevant Rules are valid under the Constitution and the Rules Enabling Act." *Id.* The court held they are valid and noted that "the Supreme Court has rejected every challenge to the Federal Rules that it has considered under the Rules Enabling Act." *Id.* (*quoting Abbas v. Foreign Policy Grp., LLC*, 783 F.3d

9

1328, 1336 (D.C. Cir. 2015)). The court therefore held that Ohio's affidavit of merit requirement did not apply in federal court.

*Gallivan* compels the conclusion that Michigan's Affidavit of Merit Statute does not apply to medical malpractice claims brought in federal court. Like the Ohio affidavit of merit requirement addressed in *Gallivan*, Michigan's Affidavit of Merit Statute imposes a pleading requirement beyond those imposed by the Federal Rules. It requires a plaintiff alleging medical malpractice to "file with the complaint an affidavit of merit." *See* Mich. Comp. Laws § 600.2912d(1). Rules Rule 8, 12, and 9(a) do not impose any such requirement to file a complaint for malpractice in federal court. And those rules are valid. *See Gallivan*, 943 F.3d at 294. Thus, under *Gallivan*, Michigan's Affidavit of Merit Statute does not apply to medical malpractice actions brought in federal court. *See also Albright v. Christensen*, 507 F.Supp.3d 851, 861 (E.D. Mich. 2020) ("Michigan Compiled Laws § 600.2912d, which requires an affidavit of merit to be filed with a medical malpractice complaint, does not apply in federal court."); *Herriges v. Cty. of Macomb*, 2020 WL 3498095, at *11 (E.D. Mich. June 29, 2020) ("[I]t has been settled for some time that the [Affidavit of Merit Statute] outlines a pleading requirement that does not apply to an action in federal court.").

**B**

The Court's inquiry does not end there. It is not enough to show the Court's prior decision erred. To succeed on a motion for reconsideration, Plaintiff must also "show that correcting the defect will result in a different disposition of the case." E.D. Mich. L.R. 7.1(h)(3). Defendants argue that he has not made that showing here. The Court agrees. Thus, the Court will not reconsider its grant of summary judgment against Plaintiff on the Malpractice Claim.

In a medical malpractice action under Michigan law, "[e]xpert testimony is required to establish the applicable standard of care and to demonstrate that the defendant breached that standard." *Gonzalez v. St. John Hosp. & Med. Ctr.*, 739 N.W.2d 392, 395 (Mich. App. 2007). "[T]he party proposing to call an expert bears the burden to show that his or her expert meets [the requisite statutory] qualifications." *Cox v. Hartman*, 911 N.W.2d 219, 224 (Mich. App. 2017) (*quoting Gay v. Select Specialty Hosp.*, 813 N.W.2d 354, 358 (Mich. App. 2012)).

Defendants contend that Plaintiff lacks the expert testimony needed to establish that Olagbaiye committed medical malpractice. In support of this argument, Defendants rely upon a Michigan statute, Mich. Comp. Laws § 600.2169(1) (the "Malpractice Expert Statute"), that governs who may offer expert testimony regarding the applicable standard of care in a medical malpractice case. In relevant part, the Malpractice Expert Statute provides:

> (1) In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and meets the following criteria:
>
> (b) Subject to subdivision (c) [which is not relevant here], during the *year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either or both of the following*:
>
>    (i)    The active clinical practice of *the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed* and, if that party is a specialist, the active clinical practice of that specialty.
>
>    (ii)    The instruction of students in an accredited health professional school or accredited residency or clinical research program *in the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed* and, if that party is a specialist, an accredited health professional school or accredited residency or clinical research program in the same specialty.

Mich. Comp. Laws § 600.2169(1)(b) (emphasis added).

Defendants argue that the Malpractice Expert Statute precludes Plaintiff's expert witness, Dr. Mahir Elder, from opining on the standard of care applicable to Olagbaiye because during the year preceding Olagbiaye's alleged malpractice, Dr. Elder did not instruct or practice in "the same health profession" as Olagbaiye. In response, Plaintiff does not dispute that the Malpractice Expert Statute applies in

12

federal court.[3]  Instead, Plaintiff asserts that Dr. Elder may testify about the standard of care applicable to Olagbaiye because Dr. Elder and Olagbaiye share "similar duties . . . including but not limited to prescribing medications, ordering diagnostic tests, managing a patient's overall care, and being board certified in special areas of practice." (Pl. Reply Brief, ECF No. 136, PageID.4473.)  The Court agrees with Defendants.

The Malpractice Expert Statute focuses on whether the proposed expert and the defendant medical professional share the "same health profession."  Michigan law defines "health profession" as "a vocation, calling, occupation, or employment performed by an individual acting pursuant to a license or registration issued under [Article 15 of the Public Health Code]." Mich. Comp. Laws § 333.16105(2). "Registration" includes a "specialty certification of a licensee and a health profession specialty field license." Mich. Comp. Laws § 333.16108(2).  Taking these

---

[3] Courts in several cases have held that Federal Rule of Evidence 601 – which provides in relevant part that "in a civil case, state law governs the witness's competency regarding a claim or defense for which state law supplies the rule of decision" – requires the application of the Malpractice Expert Statute to claims in federal court that are governed by Michigan substantive law. *See Campbell v. United States*, 2020 WL 9349618, at *5 (E.D. Mich. Nov. 23, 2020); *Words v. United States*, 2015 WL 7770863, at *2 (E.D. Mich. Dec. 3, 2015); *Benedict v. United States*, 2015 WL 8538026, at ** 1-2 (E.D. Mich. 2015); *McCaffrey v. St. Joseph Mercy Hospital*, 2000 WL 1279159, at *6, n.7 (E.D. Mich. 2000).  The Sixth Circuit has further concluded that Rule 601 requires the application of a Tennessee statute, similar to the Malpractice Expert Statute here, to claims pending in federal court that are governed by Tennessee substantive law. *See Legg v. Chopra*, 286 F.3d 286, 289-90 (6th Cir. 2002).

provisions together, "the statutory definition of 'health profession' indicates that a health profession may be determined by reference to a license or a registration, and a registration includes a specialty certification." *Hartman*, 911 N.W.2d at 226.

This Court must therefore compare the licenses and specialty certifications of Olagbaiye and Dr. Elder to determine whether they fall under "the same health profession." Here, Olagbaiye is, and was at all times relevant to this action, a nurse practitioner. Under Michigan law, the term "nurse practitioner" is "a specialized term used in nursing that refers to a registered nurse who receives advanced training and is qualified to undertake *some* of the duties and responsibilities formerly assumed only by a physician." *Cox ex rel. Cox v. Bd. of Hosp. Mgrs. for City of Flint*, 651 N.W.2d 356, 360, n.10 (Mich. 2002) (emphasis added). More specifically, nurse practitioners are licensed nurses who obtain specialty certification from the Michigan Board of Nursing under Mich. Comp. Laws § 333.17210(1). Nurse practitioners are therefore a distinct "health profession" under Michigan's competency statute. *See Hartman*, 911 N.W.2d at 227 (holding defendant's expert, a nurse practitioner, was not competent to testify to the standard of care for a registered nurse because nurse practitioners are a distinct "health profession" under § 600.6129(1)(b)).

14

On the other hand, Dr. Elder is a licensed physician – a cardiologist with seven board certifications. (*See* Dep. of Dr. Mahir Elder, at 8-9, ECF No. 82-4, PageID.1257-1258.) Under Michigan law, a physician is "an individual who is licensed or authorized under [the Public Health Code] to engage in the practice of medicine." Mich. Comp. Laws § 333.17001(f).

The critical distinction between the licensure and practice of physicians like Dr. Elder, on one hand, and nurse practitioners like Olagbaiye, on the other hand, is fatal to Olagbaiye's claim that Dr. Elder is competent under the Malpractice Expert Statute to testify about the standard of care for nurse practitioners. Nurses and nurse practitioners, unlike physicians, "do not engage in the practice of medicine." *Cox*, 911 N.W.2d at 224. They are licensed separately to practice a distinct profession. As such, Olagbaiye and Dr. Elder do not practice "the same health profession" under Michigan law. Dr. Elder is therefore not competent under the Malpractice Expert Statute to testify regarding the applicable standard of care for Olagbaiye.

The Michigan Court of Appeals' decision in *McElhaney v. Harper-Hutzel Hosp.*, 711 N.W.2d 795 (Mich. App. 2006), is instructive. In *McElhaney*, a plaintiff brought a malpractice claim against a nurse midwife. *See id.* at 799. Nurse midwifes, like nurse practitioners, are registered nurses who obtain additional certification under Mich. Comp. Laws § 333.17210(1). Plaintiff's proposed experts on the applicable standard of care were obstetricians/gynecologists (*i.e.*, physicians). *Id.* at

15

799-800.  The court held that "because nurse midwives are separately licensed professionals who practice nursing with specialty certification in the practice of nurse midwifery, obstetricians/gynecologists may not testify about their standard of practice or care." *Id.* at 800.  Here, as in *McElhaney*, Dr. Elder, a physician, is not competent under Michigan law to testify as to the standard of care for Olagbaiye, a separately licensed professional practicing nursing with a specialty certification as a nurse practitioner.

Plaintiff's arguments to the contrary are unavailing.  First, Plaintiff asserts that Dr. Elder, a professor at Wayne State University for over three years preceding AD Milline's death, instructed "a number of nurse practitioners." (Mot., ECF No. 131, PageID.4311.)  However, Plaintiff has not shown that Dr. Elder devoted "a majority of his professional time" in the year preceding Olagbaiye's alleged malpractice to the instruction of nurse practitioners, as the Malpractice Expert Statute requires.

Second, Plaintiff contends that Dr. Elder is competent because he testified to what "any medical professional" would have done." (Reply Br., ECF No. 136, PageID.4473-4474.)  But the fact that Dr. Elder felt comfortable opining as to what "any medical professional" would have done does not mean that he was competent under Michigan law to offer that opinion against a nurse practitioner in a medical malpractice case.  Indeed, deeming Dr. Elder competent to testify against Olagbaiye on the ground that Dr. Elder broadly opined about the standard of care applicable to

16

"any medical professional" would effectively negate the Malpractice Expert Statute's clear requirement that an expert practice or teach in the same "health care profession" as the party whose conduct he addresses.

Finally, Plaintiff suggests Dr. Elder is competent to opine as to Olagbaiye's standard of care because "Olagbaiye is only permitted to treat Plaintiff in collaboration with a licensed physician." (*Id.*, PageID.4474-4475.) But the Malpractice Expert Statute does not recognize this theory of competence. As the court in *McElhaney* noted, "[t]hough it may appear reasonable that a physician with substantial educational and professional credentials should be able to testify about the standard of care of a nurse who works in a closely related field, we are constrained by the plain words of the statute that the expert witness must practice in the 'same health profession.'" *McElhaney*, 711 N.W.2d at 800.

Because Plaintiff's sole expert witness on the applicable standard of care is not competent to testify to the applicable standard of care under the Malpractice Expert Statute, Plaintiff's medical malpractice claim against Olagbaiye cannot proceed.[4]

---

[4] In a previous Opinion and Order, the Court concluded that Plaintiff may support his deliberate indifference claim against Olagbaiye with expert medical testimony from Dr. Elder. (*See* Op. and Order, ECF No. 134, PageID.4448-4449.) That ruling is not inconsistent with the Court's ruling above that Plaintiff may not support his medical malpractice claim against Olagbiaye with testimony from Dr. Elder. The Malpractice Expert Statute, which bars Plaintiff from offering Dr. Elder's testimony in support of his medical malpractice claim, does not apply to Plaintiff's deliberate

17

C

Plaintiff counters that even if his own expert, Dr. Elder, is not competent to testify about the applicable standard of care, he may nonetheless proceed with the Malpractice Claim because testimony from Olagbaiye's own expert witnesses establishes both the applicable standard of care and a breach of that standard. (Mot., ECF No. 131, PageID.4311-4315.). The Court disagrees.

Olagbaiye has offered only a single expert witness who may be competent to testify on the applicable standard of care: Michael McMunn, a nurse practitioner.[5] But McMunn stated in his deposition that Olagbaiye did not "violate[] the standard of care with respect to his care and treatment of [AD] Milline." (Dep. of Michael McMunn, at 121, ECF No. 100-1, PageID.3498). Accordingly, Plaintiff cannot meet his burden to establish a breach of the standard of care by relying on Olagbaiye's own expert witnesses.

---

indifference claim. The admissibility of Dr. Elder's testimony on that claim is governed by the Federal Rules of Evidence, and, as the Court previously explained, Defendants have failed to show that those rules prohibit Plaintiff from offering Dr. Elder's testimony in support of the deliberate indifference claim. (*See id.*)

[5] Olagbaiye's other proposed expert witnesses do not practice in the "same health profession" as Olagbaiye.

## IV

For the reasons explained above, even after correcting the Court's error in applying Michigan's Affidavit of Merit Statute, the Malpractice Claim against Olagbaiye still fails as a matter of law because Plaintiff has not produced expert testimony to support the claim as required under Michigan law.  Accordingly, Plaintiff is not entitled to reconsideration of this Court's order granting summary judgment against him on the Malpractice Claim.  Plaintiff's motion for reconsideration (ECF No. 131) is therefore **DENIED**.

**IT IS SO ORDERED.**

/s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  October 6, 2021

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 6, 2021, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764

19